*951 OPINION.
Disney:
After careful consideration of the voluminous transcript of the testimony given at the hearing herein and the numerous exhibits admitted in evidence, we have found the facts as heretofore set forth, which make the applicable law thereto not very difficult.
*952 The record shows that Schoenfeld Bros. Inc., the petitioner herein, was a going corporation and had been such since its organization in 1914. The facts do not show exceptional circumstances— although all its stockholders were members of the same family— that would, in our opinion, warrant us in disregarding the petitioner’s claim that it and its stockholders are separate taxable entities. Such, in our opinion, they were.
It is definitely settled by numerous decisions of this Board and of the courts that separate taxable entities generally do exist between a corporation and its stockholders, and, when such is the case, losses when arising from bona fide sales or exchanges between them may be allowed to either. See Corrado & Galiardi, Inc., 22 B. T. A. 847; Edward Securities Corporation, 30 B. T. A. 918; affd., 83 Fed. (2d) 1007; A. S. Eldridge, 30 B. T. A. 1322; affd., 79 Fed. (2d) 629; A. R. Glancy, Inc., 31 B. T. A. 236; Marjory Taylor Hardwick, 33 B. T. A. 249; Ralph Hochstetter, 34 B. T. A. 791; Commissioner v. McCreery, 83 Fed. (2d) 817; Jones v. Helvering, 71 Fed. (2d) 214; certiorari denied, 293 U. S. 583.
All the sales in question herein were consummated prior to the enactment of the Revenue Act of 1934 and, therefore, at a time when the full amount of losses resulting from such sales were allowable, provided the sales were bona fide. A. S. Eldridge, supra.
The record shows that prior to the aforesaid sales the petitioner was the owner of the securities in question, which securities had been purchased for it with its funds through the instrumentality of its stockholders, in whose names certificates of stock were at times issued and held in trust for petitioner, but only for the purpose of facilitating and expediting trading therein, the real ownership thereof being in the petitioner.
The record further shows that petitioner by proper resolutions of its stockholders (termed trustees) definitely decided to sell at the then market price certain designated securities and by said resolutions the stockholders were given the option of buying the designated securities at said market prices.
The evidence, in our opinion, further, shows that Max and Theodore Schoenfeld purchased from petitioner the securities involved herein, described and set forth in our findings of fact, at the prevailing market prices for the same existing on the dates the resolutions authorizing their sale were passed. The manner in which the sales in question were effected is set out fully in our findings of fact, and it is not necessary to repeat it here.
The record shows there were several mistakes or errors made in the matter of entering on the books of the petitioner and of Max and Theodore Schoenfeld proper credits and debits resulting from the *953 various transactions described in our findings of fact, which errors, in our opinion, are satisfactorily explained and show that there was no attempt made thereby to defraud the United States or evade the payment of any income tax due the United States from the petitioner.
Because of the error of use of the figure $40 instead of $575 as sale price of the Tri-Continental shares, petitioner’s loss is to be reduced by $585.
Counsel for respondent say in their brief:
The important question is not whether the stockholders ever came into ownership of the securities but whether the alleged sales took place within the taxable years. If they did not take place within the taxable years then the losses claimed thereon are not deductible and the taxes are due. If no valid sales wore ever made, or if a subsequent sale was made and the losses were put on the returns with the knowledge on the part of the corporation that no such sales occurred within the taxable years, then the fraud penalties are likewise due.
In the light of the facts and circumstances disclosed by the record and the law of the State of Washington, we are of the opinion and hold that the sales in question were bona fide and that the title to the securities involved herein was intended to pass and did pass from the petitioner to Max and Theodore Schoenfeld in the taxable years, as claimed by the petitioner. We are further of the opinion and hold, in the circumstances shown, that the fact of the securities not being endorsed and having thereon no transfer revenue stamps did not invalidate the sale. The pertinent law of the State of Washington is, as set forth in Remington’s Revised Statutes, as follows:'
Section 5836-18. Property in specific goods passes when parties so intend.
(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.
(2) For the purpose of ascertaining the intentions of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.
Section 5836-19. Rules for ascertaining intention.
Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:
Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.
Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until such thing be done.
With respect to respondent’s insistence that petitioner is or may be subject to the 50 percent penalty as prescribed in section 298 (b) of the Revenue Act of 1932, it is well and definitely settled that fruad is *954 never presumed. “Not only is it never presumed, but the ordinary preponderance of evidence is not sufficient to establish such a charge. It must be proved by clear and convincing evidence.” Henry S. Kerbaugh, 29 B. T. A. 1014; affd., 74 Fed. (2d) 749.
The burden of proving fraud is upon the respondent and his proof must be clear and convincing. James Nicholson, 32 B. T. A. 977, 989; affd., 90 Fed. (2d) 978; Charles E. Mitchell, 32 B. T. A. 1093, 1129, 1137; Oscar G. Joseph, 32 B. T. A. 1192, 1204; Harry Feldman, 34 B. T. A. 517, 520.
In view of our findings of fact, there is, in our opinion and we so hold, no sufficient evidence in the record on which to base the imposition of any penalty, and imposition thereof is disapproved.

Decision will be entered under Rule 50.